UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-61923-CIV-SMITH

ABS-CBN CORPORATION., *et al.*,

    Plaintiffs,

vs.

TFCTVLIVE.COM, *et al.*,

    Defendants.
_____/

**ORDER GRANTING MOTION FOR ENTRY OF PRELIMINARY INJUNCTION**

THIS CAUSE came before the Court upon Plaintiffs' Motion for Entry of Preliminary Injunction (the "Motion") [DE 5]. The Court has carefully reviewed the Motion and the record and is otherwise fully advised in the premises.

By the instant Motion, Plaintiffs, ABS-CBN Corporation, ABS-CBN Film Productions, Inc., d/b/a Star Cinema, and ABS-CBN International (collectively "Plaintiffs") move for entry of a preliminary injunction against Defendants, the individuals, partnerships, business entities, and unincorporated associations identified on Schedule "A" hereto (collectively "Defendants"), pursuant to 15 U.S.C. § 1116, 17 U.S.C. § 502(a), Federal Rule of Civil Procedure 65, and The All Writs Act, 28 U.S.C. § 1651(a).

The Court convened a hearing on August 22, 2019, at which only counsel for Plaintiffs was present and available to present evidence supporting the Motion. Because Plaintiffs have satisfied the requirements for the issuance of a preliminary injunction, the Court will now grant Plaintiffs' Motion for Preliminary Injunction

## I. Factual Background[1]

Plaintiff ABS-CBN International, is the owner of the following trademarks which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "ABS-CBN Registered Marks"):

| Trademark | Registration Number | Registration Date | Class/Services |
|---|---|---|---|
| ABS-CBN | 2,334,131 | March 28, 2000 | IC 036 – telephone calling card services<br><br>IC 038 – Television broadcasting services via satellite and cable |
| TFC | 3,733,072 | Jan. 5, 2010 | IC 038 – Television broadcasting services via satellite and cable<br><br>IC 041 – Production and programming of television shows, entertainment and a variety of programming distributed over television, satellite and via a global computer network |

(*See* Declaration of Elisha J. Lawrence in Support of Plaintiffs' Motion for Preliminary Injunction ("Lawrence Decl.") ¶¶ 4-5; *see also* United States Trademark Registrations of the ABS-CBN Registered Marks at issue attached as Composite Exhibit 1 to the Complaint.) The ABS-CBN Registered Marks are used in connection with the creation and distribution of entertainment content in the categories identified above. (*See id.* ¶¶ 4-5.)

Plaintiff ABS-CBN International is further the owner of all rights in and to the following common law trademark (the "ABS-CBN Common Law Mark"):

---

[1] The factual background is taken from Plaintiffs' Complaint, Motion, and supporting Declarations submitted by Plaintiffs.

| Trademark |
|---|
|  |

(*See* Lawrence Decl. ¶ 6.) The ABS-CBN Common Law Mark is used in connection with the creation and distribution of entertainment content. (*See id.*) Together, the ABS-CBN Registered Marks and the ABS-CBN Common Law Mark are referred to as the "ABS-CBN Marks." Plaintiffs ABS-CBN Corporation, ABS-CBN Film Productions, Inc., and ABS-CBN International share exclusive rights in and to the ABS-CBN Marks. Moreover, ABS-CBN Corporation, ABS-CBN Film Productions, Inc., and ABS-CBN International are all licensed to use and enforce the ABS-CBN Marks. (*See id.*)

Plaintiff ABS-CBN Film Productions, Inc. is the owner of the registered copyright in and to the movies specifically identified in Exhibit 2 to the Complaint [DE 1-3] and Plaintiff ABS-CBN Corporation is the owner of many unregistered copyrights, including but not limited to those specifically identified in paragraph 26 of the Complaint and in Exhibit 3 thereto [DE 1-4]. (*See* Lawrence Decl. ¶ 4.) Collectively, these registered and unregistered copyrighted works are referred to herein as the "Copyrighted Works." ABS-CBN Corporation, ABS-CBN Film Productions, and ABS-CBN International all share exclusive rights in and to the Copyrighted Works.

Defendants, by operating the fully accessible[2] Internet websites operating under their individual, partnership, and/or unincorporated association names identified on Schedule "A" (the

---

[2] Defendant Number 28 uses its "putlocker5movies.net" domain name to act as a supporting domain name to direct traffic to its website operating under the "putlocker5movies.tv" domain name, from which users may view the Copyrighted Works. Accordingly, the web pages for the supporting domain name is included with the web pages to which that site redirects. (*See* Lawrence Decl. ¶ 13 n. 1; Daley Decl. ¶ 2 n. 1.)

"Subject Domain Names") have advertised, promoted, offered for distribution, distributed and/or publicly performed the Copyrighted Works under what Plaintiffs have determined to be counterfeits, infringements, reproductions, and/or colorable imitations of the ABS-CBN Marks. (*See* Lawrence Decl. ¶¶ 12-15; Declaration of Christine Ann Daley in Support of Plaintiffs' Motion for Preliminary Injunction ("Daley Decl.") ¶ 2.)

Although each Defendant may not copy and infringe each of Plaintiffs' trademarks for each category of services protected or each of Plaintiffs' copyrighted works, Plaintiffs have submitted sufficient evidence showing each Defendant has infringed, at least, one or more of the ABS-CBN Marks and the Copyrighted Works at issue. (*See* Lawrence Decl. ¶¶ 12-15.) Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of the of the ABS-CBN Marks and/or perform or distribute the Copyrighted Works. (*See id.* ¶¶ 12, 15.)

As part of its ongoing investigation regarding the infringement of its intellectual property, on behalf of Plaintiffs, Stephen M. Gaffigan, P.A. performed an investigation into the advertising accounts used by Defendants. (*See* Daley Decl. ¶ 5.) By inspecting the Hyper Text Markup Language ("html") Source Code for the Internet websites operating under the Subject Domain Names, Stephen M. Gaffigan, P.A. was able to specifically locate and identify many of the advertising revenue accounts of the Defendants, which are identified on Schedule "B," along with Defendants' associated e-mail addresses as identified in the publicly available domain name registration data for Defendants or directly on Defendants' websites operating under the Subject Domain Names. (*See* Daley Decl. ¶¶ 3, 5 n.2.) Plaintiffs' representative conducted a review of and visually inspected the Internet websites operating under the Subject Domain Names or the web page captures of the Subject Domain Names and determined the distribution services offered by

4

Defendants were not genuine or authorized distribution services of Plaintiffs' Copyrighted Works. (*See* Lawrence Decl. ¶¶ 13-15.)

On July 31, 2019, Plaintiffs filed their Complaint [DE 1] against Defendants for federal trademark counterfeiting and infringement, false designation of origin, common law unfair competition, common law trademark infringement, and direct and contributory copyright infringement. On August 1, 2019, Plaintiffs filed their *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets [DE 5]. On August 9, 2019, this Court entered a Sealed Order Granting *Ex Parte* Application for Entry of Temporary Restraining Order (the "TRO"), and temporarily restrained Defendants from infringing the ABS-CBN Marks and Copyrighted Works at issue. Pursuant to the Court's August 9, 2019 TRO, Plaintiffs properly served Defendants with a copy of the Complaint, the Court's August 9, 2019 TRO, and all filings in this matter [*see* DE Nos. 14, 15, and 16]. On August 22, 2019, the Court conducted a hearing on Plaintiffs' Motion, at which only counsel for Plaintiffs was in attendance

## II.    Legal Standard

In order to obtain a preliminary injunction, a party must demonstrate "(1) [there is] a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case).

### III. Conclusions of Law

The declarations Plaintiffs submitted in support of their Motion support the following conclusions of law:

A. Plaintiffs have a strong probability of proving at trial that consumers are likely to be confused by Defendants' advertisement, promotion, or distribution of services, and distribution and public performances of the Copyrighted Works using counterfeits, reproductions, or colorable imitations of the ABS-CBN Marks, and that the services Defendants are offering and promoting are unauthorized distribution services using the ABS-CBN Marks.

B. Because of the infringement of the ABS-CBN Marks and Copyrighted Works, Plaintiffs are likely to suffer immediate and irreparable injury if a preliminary injunction is not granted. The following specific facts, as set forth in Plaintiffs' Complaint, Motion, and accompanying declarations, demonstrate that immediate and irreparable loss, damage, and injury will result to Plaintiffs and to consumers because it is more likely true than not that:

1. Defendants own or control Internet websites, domain names, or website businesses which advertise, promote, and/or offer distribution services using counterfeit and infringing trademarks and infringe the Copyrighted Works in violation of Plaintiffs' rights; and

2. There is good cause to believe that Defendants will continue to violate Plaintiffs' intellectual property rights and offer more distribution services of copyrighted content under counterfeit and infringing versions of Plaintiffs' trademarks; that consumers are likely to be misled, confused, or disappointed by the quality of these services; and that Plaintiffs may suffer loss of sales for their services.

C. The balance of potential harm to Defendants in restraining their trade in counterfeit and infringing services if a preliminary injunction is issued is far outweighed by the potential harm

to Plaintiffs, their reputations, and their goodwill as creators and distributors of quality entertainment content, if such relief is not issued.

D.  The public interest favors issuance of the preliminary injunction to protect Plaintiffs' trademark and copyright interests and protect the public from being defrauded by the palming off of counterfeit services as Plaintiffs' genuine services.

E.  Under 15 U.S.C. § 1117(a) and 17 U.S.C. § 504(a)(b), Plaintiffs may be entitled to recover, as an equitable remedy, the illegal profits gained through Defendants' distribution of and profits from services using counterfeits and infringements of the ABS-CBN Marks and Copyrighted Works. *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) (quoting *Fuller Brush Prods. Co. v. Fuller Brush Co.*, 299 F.2d 772, 777 (7th Cir. 1962) ("An accounting of profits under § 1117(a) is not synonymous with an award of monetary damages: '[a]n accounting for profits . . . is an equitable remedy subject to the principles of equity.'")).

F.  Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Levi Strauss & Co.*, 51 F.3d at 987 (citing *Federal Trade Commission v. United States Oil & Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984)).

G.  In light of the inherently deceptive nature of the piracy business, and the likelihood that Defendants have violated federal trademark and copyright laws, Plaintiffs have good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

Upon review of Plaintiffs' Complaint, Motion, and supporting evidentiary submissions, it is hereby

ORDERED that Plaintiffs' Motion for Preliminary Injunction [DE 5] is **GRANTED**, according to the terms set forth below:

(1) Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order are hereby restrained and enjoined until further Order of this Court:

    a. From advertising, promoting, copying, broadcasting, publicly performing, and/or distributing any of the Plaintiffs' content or copyrighted works;

    b. From advertising, promoting, offering, distributing, using, and/or causing to be advertised, promoted, offered and/or distributed, any services using the ABS-CBN Marks, or any confusingly similar trademarks, other than those actually offered or distributed by Plaintiffs; and

    c. From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: any evidence relating to the promotion, advertisement, and/or distribution of services or copyrighted content bearing or under the ABS-CBN Marks, or any confusingly similar trademarks or public performances or distributions of Plaintiffs' Copyrighted Works.

(2) Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue, until further Order of this Court, the use of the ABS-CBN Marks or any confusingly similar trademarks, on or in connection with all Internet websites, domain names, or businesses owned and operated, or controlled by them, including the Internet websites operating under the Subject Domain Names;

(3) Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue, until further Order of this Court, the use of the ABS-CBN Marks and/or the names of the Copyrighted Works, or any confusingly similar trademarks within domain name extensions, metatags or other markers within website source code, from use

on any webpage (including the title of any web page), from any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms that are visible to a computer user or serves to direct computer searches to websites registered, owned, or operated by each Defendant, including the Internet websites operating under the Subject Domain Names;

(4) Each Defendant shall not transfer ownership of the Subject Domain Names during the pendency of this action, or until further order of the Court;

(5) Upon Plaintiffs' request, the privacy protection service for any of the Subject Domain Names for which the registrant uses such privacy protection service to conceal the registrant's identity and contact information is ordered, to the extent not already done, to disclose to Plaintiffs the true identities and contact information of those registrants;

(6) The domain name registrars for the Subject Domain Names shall immediately, to the extent not already done, assist in changing the registrar of record for the Subject Domain Names to a holding account with a registrar of Plaintiffs' choosing (the "New Registrar"), excepting any such domain names which such registrars have been notified in writing by Plaintiffs have been or will be dismissed from this action, or as to which Plaintiffs have withdrawn their request to immediately transfer such domain names. To the extent the registrars do not assist in changing the registrars of record for the domains under their respective control within one business day of receipt of this Order, the top-level domain (TLD) registries, for the Subject Domain Names, or their administrators, including backend registry operators or administrators, within five business days of receipt of this Order, shall change, or assist in changing, the registrar of record for the Subject Domain Names to a holding account with the New Registrar, excepting any such domain names which such registries have been notified in writing by Plaintiffs have been or will be

dismissed from this action, or as to which Plaintiffs have withdrawn their request to immediately transfer such domain names. Upon the change of the registrar of record for the Subject Domain Names, the New Registrar will maintain access to the Subject Domain Names in trust for the Court during the pendency of this action. Additionally, the New Registrar shall immediately institute a temporary 302 domain name redirection which will automatically redirect any visitor to the Subject Domain Names to the following Uniform Resource Locator ("URL") http://servingnotice.com/BEF2L/index.html whereon copies of the Complaint, this Order, and all other documents on file in this action are displayed. Alternatively, the New Registrar may update the Domain Name System ("DNS") data it maintains for the Subject Domain Names, which link the domain names to the IP addresses where their associated websites are hosted, to NS1.MEDIATEMPLE.NET and NS2.MEDIATEMPLE.NET, which will cause the domain names to resolve to the website where copies of the Complaint, this Order, and all other documents on file in this action are displayed. After the New Registrar has effected this change, the Subject Domain Names shall be placed on lock status by the New Registrar, preventing the modification or deletion of the domains by the New Registrar or Defendants;

(7)     Each Defendant shall continue to preserve copies of all computer files relating to the use of any of the Subject Domain Names and shall take all steps necessary to retrieve computer files relating to the use of the Subject Domain Names that may have been deleted before the entry of this Order;

(8)     Upon receipt of notice of this Order, Defendants and the advertising services, networks and/or platforms identified on Schedule "B" hereto (the "Advertising Services"), and all financial institutions, payment processors, banks, escrow services, and/or money transmitters, and their related companies and affiliates, shall, to the extent not already done, immediately identify

and restrain all funds, as opposed to ongoing account activity, in the advertising accounts related to Defendants, and their associated payment accounts and e-mail addresses, as identified on Schedule "B" hereto, as well as all funds in or which are transmitted into (i) any other accounts of the same customer(s); (ii) any other accounts which transfer funds into the same financial institution/advertising account(s), and/or any of the other accounts subject to this Order; and (iii) any other financial institution/advertising accounts tied to or used by any of the Subject Domain Names identified on Schedule "B" hereto; and (iv) immediately divert those restrained funds into a holding account for the trust of the Court;

(9) Upon receipt of notice of this Order, Defendants and all financial institutions, payment processors, bank, escrow services, money transmitters, or marketplace platforms receiving notice of this Order, including but not limited to, the Advertising Services identified on Schedule "B" hereto, and their related companies and affiliates, shall further, to the extent not already done, provide Plaintiffs' counsel with all data that details (i) an accounting of the total funds restrained and identifies the financial account(s) and sub-account(s) which the restrained funds are related to, and (ii) the account transactions related to all funds transmitted into the financial account(s) and sub-account(s) which have been restrained. No funds restrained by this Order shall be transferred or surrendered by any financial institution, payment processor, bank, escrow service, money transmitter, or marketplace platform, including but not limited to the Advertising Services identified on Schedule "B" hereto, and their related companies and affiliates for any purpose (other than pursuant to a chargeback made pursuant to their security interest in the funds) without the express authorization of this Court;

(10) Any Defendant or financial institution account holder subject to this Order may petition the Court to modify the asset restraint set out in this Order;

(11) This Order shall apply to the Subject Domain Names, associated websites, and any other domain names and websites, or financial or advertising accounts which are being used by Defendants for the purpose of counterfeiting the ABS-CBN Marks at issue in this action and/or unfairly competing with Plaintiffs;

(12) As a matter of law, this Order shall no longer apply to any Defendant or associated domain name dismissed from this action or as to which Plaintiffs have withdrawn their request for a preliminary injunction;

(13) Pursuant to 15 U.S.C. § 1116(d)(5)(D) and Federal Rule of Civil Procedure 65(c), Plaintiffs shall maintain their previously posted bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00), as payment of damages to which Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court. In the Court's discretion, the bond may be subject to increase should an application be made in the interest of justice;

(14) Additionally, for the purpose of providing additional notice of this proceeding, and all other pleadings, orders, and documents filed herein, the owners, operators and/or administrators of the Advertising Services as identified on Schedule "B" hereto, shall, to the extent not already done, at Plaintiffs' request, provide Plaintiffs' counsel with any e-mail address known to be associated with Defendants' respective advertising accounts and/or Subject Domain Names; and

(15) This Order shall remain in effect during the pendency of this action, or until such further date as set by the Court or stipulated to by the parties.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 22nd day of August, 2019.

RODNEY SMITH
UNITED STATES DISTRICT JUDGE

cc: All counsel of record

## SCHEDULE "A"
## DEFENDANTS BY NUMBER AND SUBJECT DOMAIN NAME

| Def. No. | Subject Domain Name |
|---|---|
| 1 | tfctvlive.com |
| 2 | du30ph.com |
| 3 | filikula.me |
| 4 | filikula.site |
| 5 | fulltagalogmovies.org |
| 6 | lambinganhd.su |
| 7 | lambinganme.net |
| 7 | pinoyakotv.su |
| 8 | lambinganpinoytambayan.net |
| 9 | lambinganteleserye.net |
| 10 | mypinoymovies.com |
| 11 | ofwpinoy1tv.su |
| 12 | ofwpinoytvako.com |
| 13 | pariwiki.com.ph |
| 14 | pariwikichannel.su |
| 14 | pariwikitvshows.su |
| 15 | pariwikiteleserye.su |
| 15 | pariwikitv.org |
| 15 | sonytv.su |
| 16 | pinoy1tvs.su |
| 16 | pinoytvtambayans.su |
| 17 | pinoyako1.su |
| 18 | pinoychannelsako.com |
| 19 | pinoyflixtambayan.net |
| 20 | pinoyflixtvtambayan.su |
| 21 | pinoyhdreplays.su |
| 21 | pinoyteleseryereplay.su |
| 22 | pinoylambingantv.co |
| 23 | pinoylambingantv.su |
| 24 | pinoymovies.to |
| 25 | pinoymovieshub.cc |
| 26 | pinoyreview.su |
| 27 | pinoytvchannel.ru |
| 28 | putlocker5movies.net |
| 28 | putlocker5movies.tv |
| 29 | shows.su |
| 30 | tambayanpinoytv.net |

| Def. No. | Subject Domain Name |
|---|---|
| 31 | tambayanplay.su |
| 32 | techmanio.com |
| 33 | watchpinoymoviesonline.info |
| 34 | webhamari.com |
| 35 | wowpinoy.su |

## SCHEDULE "B"
## DEFENDANTS BY NUMBER, SUBJECT DOMAIN NAME, ADVERTISING ACCOUNT INFORMATION, AND ASSOCIATED E-MAIL ADDRESSES

| Def. No. | Subject Domain Name | Advertising Service/ Platform | Account Identifier | Associated E-mail(s) |
|---|---|---|---|---|
| 1 | tfctvlive.com | N/A | N/A | tfctvlive.com@superprivacyservice.com |
| 2 | du30ph.com | Google Adsense, Google LLC | ca-pub-7559543077218518 | du30ph.com@domainsbyproxy.com |
| 3 | filikula.me | popads.net, Tomksoft S.A | 2788517 | Not Listed |
| 4 | filikula.site | N/A | N/A | Not Listed |
| 5 | fulltagalogmovies.org | popads.net, Tomksoft S.A | 2998981 | Not Listed |
| 6 | lambinganhd.su | N/A | N/A | lambinganhd.su@whoisprotectservice.net |
| 7 | lambinganme.net | Taboola Taboola, Inc. | deliaahmad-pinoyakotvsu | santiagocualoping@gmail.com |
| 7 | pinoyakotv.su | Taboola Taboola, Inc. | deliaahmad-pinoyakotvsu | qaisrani4051@gmail.com |
| 8 | lambinganpinoytambayan.net | Google Adsense, Google LLC | ca-pub-1211175972738825 | pw-8a1ffdc5c474df0d1621c6d05d0cf921@privacyguardian.org |
| 9 | lambinganteleserye.net | Google Adsense, Google LLC | ca-pub-8204335281985188 | Not Listed |
| 10 | mypinoymovies.com | popads.net, Tomksoft S.A | 3191767 | pw-298d7d0cb67d2f689e23c2c20c2fbf29@privacyguardian.org |
| 11 | ofwpinoy1tv.su | Google Adsense, Google LLC | ca-pub-4114366130058641 | tiagotifa@yahoo.com |
| 12 | ofwpinoytvako.com | N/A | N/A | pw-2ced7c427bbb0b83c466d35ac3a658d1 |

15

| Def. No. | Subject Domain Name | Advertising Service/ Platform | Account Identifier | Associated E-mail(s) |
|---|---|---|---|---|
| | | | | @privacyguardian.org |
| 13 | pariwiki.com.ph | N/A | N/A | Privacy Protected by Registry |
| 14 | pariwikitvshows.su | Google Adsense, Google LLC | ca-pub-57753481822767 45 | gulnoor80@hotmail.com contact@pariwikitvshows.su |
| 14 | pariwikichannel.su | N/A | N/A | gulnoor80@hotmail.com |
| 15 | pariwikitv.org | Google Adsense, Google LLC | ca-pub-95312672356473 56 | Not Listed |
| 15 | sonytv.su | Google Adsense, Google LLC | ca-pub-73728984727355 27 ca-pub-49458446748735 27 | waqarkhanmalghani@gmail.com |
| 15 | pariwikiteleserye.su | N/A | N/A | waqarkhanmalghani@gmail.com |
| 16 | pinoy1tvs.su | Google Adsense, Google LLC | ca-pub-35642362781867 79 | paktvsite@gmail.com |
| 16 | pinoytvtambayans.su | Google Adsense, Google LLC | ca-pub-87112641121333 87 | paktvsite@gmail.com |
| 17 | pinoyako1.su | Google Adsense, Google LLC | ca-pub-28384044779203 38 | pinoyako.co@gmail.com |
| 18 | pinoychannelsako.com | Google Adsense, Google LLC | ca-pub-14729701630384 88 | sahilrb6@gmail.com |
| 19 | pinoyflixtambayan.net | Google Adsense, Google LLC | ca-pub-37242617052873 18 | pw-e5cf2d132401a2177 1dd234d4727a99e @privacyguardian.org |

| Def. No. | Subject Domain Name | Advertising Service/ Platform | Account Identifier | Associated E-mail(s) |
|---|---|---|---|---|
| 20 | pinoyflixtvtambayan.su | Google Adsense, Google LLC | ca-pub-1593569282303938 | apnapakforum@gmail.com |
| 21 | pinoyteleseryereplay.su | Google Adsense, Google LLC | ca-pub-1774166935437828 | herpalasif@gmail.com |
| 21 | pinoyhdreplays.su | N/A | N/A | herpalasif@gmail.com |
| 22 | pinoylambingantv.co | mgid.com, MGID Inc. MGID UA | pinoylambingantv.co | info@pinoylambingantv.co |
| 23 | pinoylambingantv.su | Taboola Taboola, Inc. | pinoylambingantv | tillimetyou4@gmail.com |
| 24 | pinoymovies.to | N/A | N/A | Not Listed |
| 25 | pinoymovieshub.cc | N/A | N/A | contact@privacyprotect.org |
| 26 | pinoyreview.su | mgid.com, MGID Inc. MGID UA | pinoyreview.su | cashorika@gmail.com |
| 27 | pinoytvchannel.ru | Google Adsense, Google LLC | ca-pub-3341795281870761 | Not Listed |
| 28 | putlocker5movies.net | N/A | N/A | cvqkslwm@whoisprivacyprotect.com |
| 28 | putlocker5movies.tv | popads.net, Tomksoft S.A | 3400849 | pw-c5d0eb9a6d8c1688f9bd61a55a401da6@privacyguardian.org |
| 29 | shows.su | N/A | N/A | itsmedanyal@gmail.com |
| 30 | tambayanpinoytv.net | N/A | N/A | TAUNSVIAMEEN@GMAIL.COM |
| 31 | tambayanplay.su | N/A | N/A | tambayanplay.su@whoisprotectservice.net |
| 32 | techmanio.com | Google Adsense, Google LLC | ca-pub-2553794753899159 | cyousaf568@gmail.com |

| Def. No. | Subject Domain Name | Advertising Service/ Platform | Account Identifier | Associated E-mail(s) |
|---|---|---|---|---|
| 33 | watchpinoymoviesonline.info | popads.net, Tomksoft S.A | 2210986 | 3826aa198fd14ad3902378915fb5d8ef.protect@whoisguard.com |
| 34 | webhamari.com | popads.net, Tomksoft S.A | 3362263 | irfan_haider7@hotmail.com |
| 35 | wowpinoy.su | Google Adsense, Google LLC | ca-pub-1593569282303938<br>ca-pub-8480417956848558 | dbjeet@gmail.com |